# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**MIGUEL ANTONIO MARTIN,**
Petitioner,

v.

**STATE OF FLORIDA,**
Respondent.

No. 4D2025-0304

[June 4, 2025]

Petition for writ of prohibition to the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Andrew L. Siegel, Judge; L.T. Case No. 23006572CF10A.

Gordon Weekes, Public Defender, and Bernadette Burke, Assistant Public Defender, Fort Lauderdale, for petitioner.

James Uthmeier, Attorney General, Tallahassee, and Briana P. Reed, Assistant Attorney General, West Palm Beach, for respondent.

PER CURIAM.

Miguel Antonio Martin petitions for a writ of prohibition seeking review of the denial of his motion to dismiss based on Stand Your Ground immunity. We grant the petition because the State did not overcome Martin's immunity claim with clear and convincing evidence. Martin is entitled to immunity from prosecution because a reasonable person in the same circumstances would have used the same force as Martin.

## *Background*

The State charged Martin with battery on a person over 65 years of age. Martin filed a motion to dismiss seeking immunity under Florida's Stand Your Ground law, section 776.032, Florida Statutes (2023), based upon a claim that he acted in self-defense. The court conducted a hearing where the following evidence was presented.

The State's only witness was the alleged victim. The alleged victim was working as a valet driver with Martin on the day of the incident. The

alleged victim believed his role was to hand out valet tickets while Martin parked vehicles. However, the alleged victim was tasked with parking vehicles. After the alleged victim parked a vehicle, Martin cursed at him and stated he was missing valet tickets. The alleged victim told Martin not to talk to him that way, and was mad because Martin was not "showing him respect." The two men argued over the tickets. The alleged victim acknowledged that he raised his voice and "got close" to Martin during the exchange, but he denied touching Martin. At some point during the argument over the tickets, Martin punched the alleged victim. The alleged victim claimed Martin did not try to walk away from him during the altercation. However, video footage of the incident shows Martin walking away from the alleged victim prior to the punch at issue.

The defense first called the director of the venue where the incident occurred. The director did not witness the incident, but she did speak with the two men after the incident had occurred. The director noted that the alleged victim was very upset, and described him as "loud, demanding, and yelling." By contrast, Martin was calm and polite with a "pleasant demeanor."

The defense next called an eyewitness. The eyewitness testified she had observed the alleged victim yelling at Martin, and Martin trying to calm the alleged victim down. From about thirty feet away, the eyewitness observed the alleged victim pointing his finger in Martin's face. After the alleged victim "got very close" to Martin, Martin punched him. The eyewitness then observed the alleged victim following Martin while cursing at him. The eyewitness believed that prior to the punch, the alleged victim put his hands on Martin, and it "could [have been] a push."

Martin was the last witness to testify. Martin, who has only one arm, testified that on the day of the incident, the alleged victim showed up late to the valet station and had an angry demeanor. Martin offered to switch roles with the alleged victim, such that the alleged victim would collect tickets and Martin would park the vehicles, because the alleged victim was struggling to operate newer vehicles. However, even in the role switch, the alleged victim was handling the tickets improperly. When Martin tried to explain things to the alleged victim, he got upset as if Martin was trying to "boss him around." During the exchange, the alleged victim got very close to Martin such that his "spit was hitting [Martin's] face." The alleged victim then threatened Martin by saying, "[y]ou know what I can do to you, boy? I'm old enough to be your grandpa. You better show me some respect." The alleged victim then poked Martin in the chest "a couple times," and showed Martin pictures of him on his phone from his "body building days."

2

Martin attempted to walk away from the alleged victim three times during the entirety of the altercation, and the video footage reflects the third time he attempted to do so. During Martin's third attempt to walk away, the alleged victim grabbed Martin's shirt. At that point, Martin believed the alleged victim wanted to harm him. Although Martin tried to walk away, the alleged victim "kept on trying to get in [Martin's] face and trying to touch [Martin]." According to Martin, "[i]f the incident would have been way more intense than it was," it would have been difficult for Martin to get the alleged victim off of him because Martin had only one arm.

At the hearing's conclusion, the trial court orally determined the State "met its burden by clear and convincing evidence that [the punch] was not justified." The court found Martin and the alleged victim "were both mad at each other over the fact that nobody was there," and "[t]hey were working by themselves." The court further determined the situation was "heated" and "continued to get more heated as it went on." Finally, the court did not believe Martin's response was "proportional to the event."

### *Analysis*

We use a mixed standard to review a trial court's ruling on a motion for Stand Your Ground immunity. The trial court's factual findings are presumed correct and will be reversed only if those findings are not supported by competent substantial evidence. *Derossett v. State*, 311 So. 3d 880, 887 (Fla. 5th DCA 2019). The trial court's application of the law to the historical facts and its legal conclusions, however, are reviewed de novo. *Id.* This includes the trial court's ultimate conclusion of whether the use of force was justified under the facts. *Bouie v. State*, 292 So. 3d 471, 479–80 (Fla. 2d DCA 2020).

Section 776.032(1), Florida Statutes (2023), affords immunity to individuals using force in defense of their person as permitted by section 776.012, Florida Statutes. Section 776.012, in turn, provides:

> A person is justified in using or threatening to use force, except deadly force, *against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force.* A person who uses or threatens to use force in accordance with this subsection does not have a duty to retreat before using or threatening to use such force.

§ 776.012(1), Fla. Stat. (2023) (emphasis added).

"In evaluating the evidence at a hearing on immunity, an objective standard applies." *Huckelby v. State*, 313 So. 3d 861, 866 (Fla. 2d DCA 2021). "The trial court must determine whether, based on the circumstances as they appeared to the defendant, a reasonable and prudent person situated in the same circumstances and knowing what the defendant knew would have used the same force as did the defendant." *Id.* (quoting *Garcia v. State*, 286 So. 3d 348, 351 (Fla. 2d DCA 2019)).

If a defendant raises a prima facie claim of self-defense immunity, as the trial court determined was done here, the burden shifts to the State to overcome immunity by clear and convincing evidence. § 776.032(4), Fla. Stat. (2023). Clear and convincing evidence means that "the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy." *Guida v. State*, 356 So. 3d 310, 311 (Fla. 5th DCA 2023) (quoting *Edwards v. State*, 257 So. 3d 586, 588 (Fla. 1st DCA 2018)).

In the present case, the trial court did not make any credibility determinations or otherwise attempt to resolve Martin and the alleged victim's conflicting accounts of the altercation. Instead, the trial court's ruling was based purely on its legal determination that Martin's use of force was not justified or proportional under the facts. Reviewing this legal determination de novo as we are compelled to do, we disagree and conclude that a reasonable person in Martin's situation would have used the same level of force. *See Bouie*, 292 So. 3d at 480–82 (rejecting the trial court's legal determination that the defendant did not reasonably believe the use of force was necessary under the circumstances, and explaining that an appellate court "review[s] a trial court's ultimate conclusion that the defendant did not reasonably believe" the force used was necessary "under the de novo standard").

Given the circumstances facing Martin, the force used in this case was justified and proportional to the event. These circumstances included: (1) Martin having only one arm; (2) the alleged victim's verbal threats during the heated exchange; (3) the alleged victim's act of "getting close" to Martin and raising his voice (by his own admission); (4) Martin's testimony that he believed the alleged victim wanted to harm him; and (5) the alleged victim's act of pointing his finger in Martin's face and grabbing Martin's shirt as Martin attempted to walk away for a third time. *See State v. Quevedo*, 357 So. 3d 1249, 1253 (Fla. 3d DCA 2023) (finding the state failed to meet its burden to overcome immunity and considering the defendant's medical condition which subjected him to excessive bleeding, the defendant's testimony that he feared the alleged victim would kill him or cause him great bodily harm, and the alleged victim's threats).

4

Simply put, based on the circumstances as they appeared to Martin, a reasonable and prudent person situated in the same circumstances and knowing what Martin knew would have used the same force as did Martin. *See Garcia*, 286 So. 3d at 351 (reiterating that the objective standard in the Stand Your Ground context requires consideration of "whether, based on the circumstances as they appeared to the defendant, a reasonable and prudent person situated in the same circumstances and knowing what the defendant knew would have used the same force as did the defendant").

Accordingly, we grant the petition and quash the order denying Martin's motion to dismiss.

*Petition granted.*

DAMOORGIAN and CIKLIN, JJ., concur.
WARNER, J., dissents with opinion.

WARNER, J., dissenting.

I would deny the petition for prohibition, as I agree with the trial court's legal conclusion that the punch thrown by the petitioner, which broke the victim's nose, was neither proportionate to the alleged "threat" posed by the victim nor in self-defense. The petitioner did not present any evidence of "imminent use of unlawful force" by the victim. *See* § 776.012(1), Fla. Stat. (2023). While the parties were engaged in a heated argument, the victim did not take any actions which suggested that he was about to attack the petitioner. Just as likely is that the petitioner was simply tired of being harassed by an older man, which does not constitute a ground to use force against the victim.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***